UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,
Plaintiff,

v. : No. 04-473-T

AMERICAN TELECASTING OF YOUNGSTOWN, INC.,
Defendant.

**PLAINTIFF'S LOCAL RULE 12.1 STATEMENT**

Pursuant to Local Rule 12.1(a)(1), plaintiff, North American Catholic Educational Programming Foundation, Inc. ("NACEPF") submits this statement of material facts as to which there is no genuine issue necessary to be litigated.

1. NACEPF is an independent lay organization engaged in producing and broadcasting religious and educational programming for television and radio stations pursuant to licenses issued by the Federal Communications Commission ("FCC"). Affidavit of John Primeau ("Primeau Aff."), ¶ 2.

2. NACEPF is based in Rhode Island. Primeau Aff., ¶ 2.

3. Defendant American Telecasting of Youngstown, Inc. ("American") is a wholly owned subsidiary of Sprint Corporation ("Sprint"). Primeau Aff., ¶ 3.

4. NACEPF entered into an agreement captioned ITFS Excess Capacity Airtime Lease Agreement (the "Agreement") with American in 1991. Primeau Aff., ¶ 3.

5. The FCC authorizes licensees to lease excess capacity in their authorized spectrums to users who are not themselves issued licenses for Instructional Television Fixed Service ("ITFS") channels. Primeau Aff., ¶ 4.

6. NACEPF and American executed the Agreement to allow American to lease certain excess capacity from NACEPF for commercial programming. Primeau Aff., ¶ 4.

7. The Agreement specified that the term of the Agreement would begin when the FCC licensed NACEPF to operate ITFS television channels in the Youngstown market. Agreement, ¶ 4.

8. The FCC granted NACEPF an ITFS license in the Youngstown market on April 30, 1993 with the call sign of WLX-81, authorizing NACEPF to operate on the C group of channels C1, C3, and C4. Primeau Aff., ¶ 6.

9. The initial term five-year of the Agreement ran from April 30, 1993 to April 30, 1998. Primeau Aff., ¶ 6.

10. The renewal provisions contained in the Agreement were revised pursuant to the May 30, 1997 execution of the Third Amendment to ITFS Excess Capacity Airtime Lease Agreement (the "Amendment"). Primeau Aff., ¶ 6.

11. The Amendment provided for a renewal term of five (5) years that would commence automatically unless American served NACEPF with a written notice of its election not to renew the Agreement at least sixty (60) days prior to the expiration of the initial term. Primeau Aff., ¶ 6.

12. Because American did not serve NACEPF with written notice of its election not to renew the Agreement, the Agreement automatically renewed for a period of five (5) years, commencing on April 30, 1998 and ending on April 30, 2003. Primeau Aff., ¶ 9.

13. The renewal policy for an additional five-year term from April 30, 2003 through April 30, 2008 is contained in Paragraph B(b) of the Amendment. Amendment, ¶ B(b).

14. Paragraph B(b) does not specify the manner in which NACEPF should give notice to American in the event that NACEPF elected to renew the Agreement for the additional five-year term. Amendment, ¶ B(b).

15. As required by the Amendment, American was to have provided certain Subscriber Information to NACEPF by February 9, 2003. The Subscriber Information was supposed to set forth the number of subscribers to American's system in Youngstown as of January 30, 2003. The Primeau Aff., ¶ 12.

16. NACEPF never received the Subscriber Information. Primeau Aff., ¶ 16.

17. NACEPF received a document from Sprint captioned "NACEPF Channel Lease Analysis –Sprint BWG," (the "Channel Lease Analysis") via Federal Express, on February 14, 2003. Primeau Aff., ¶ 12.

18. The Channel Lease Analysis was not sent to the address for NACEPF specified in the Agreement. Primeau Aff., ¶ 15.

19. The Channel Lease Analysis was not accompanied by a cover letter, nor was any reference made in it to the Agreement, the Amendment, or the expiration or renewal of the Amendment. Primeau Aff., ¶ 13.

20. The Channel Lease Analysis did not contain the Subscriber Information for the Youngstown channels as of the Subscriber Date of January 30, 2003, nor was it specific to the Youngstown market at issue in the Agreement. Primeau Aff., ¶ 13.

21. The Channel Lease Analysis presented general subscriber information for 20 different markets in which Sprint or one of its subsidiaries was then leasing excess capacity from NACEPF, and showed how Sprint calculated its monthly lease payments for all of these markets. Primeau Aff., ¶ 13.

22. NACEPF received a similar multi-market summary from Sprint every month.

23. NACEPF elected to renew the Agreement for the Additional Renewal Term from April 30, 2003 through April 30, 2008. Primeau Aff., ¶ 17.

24. On December 2, 2002, NACEPF's attorney, Howard Barr, transmitted to the FCC an application for renewal of NACEPF's FCC license for Youngstown. Affidavit of Howard Barr ("Barr Aff."), ¶ 4.

25. Included in the application was information that Sprint had provided to Mr. Barr that was needed by NACEPF to submit its application to the FCC. Barr Aff., ¶ 6.

26. Mr. Barr sent Sprint a copy of the December 2, 2002 submission to the FCC. Barr Aff., ¶ 5.

27. From April through December 2003, Sprint continued to send a check to NACEPF each pursuant to the Agreement. Primeau Aff., ¶ 18.

28. From April through December 2003, Sprint continued to send monthly Channel Lease Analyses detailing how Sprint calculated its monthly lease payment for the different markets in which it leased capacity from NACEPF. Primeau Aff., ¶ 18.

29. In December 2003, Sprint informed NACEPF, for the first time, that it considered the Agreement to have expired. Primeau Aff., ¶ 19.

30. American made payments under the Agreement through January 2004, but has made no further payments. Primeau Aff., ¶ 19.

31. As of October 1, 2005, American owed NACEPF $64,541.97 pursuant to the Agreement. Primeau Aff., ¶ 21.

32. American continues to owe NACEPF $2,576.40 per month under the Agreement until it expires on April 30, 2008.

33. In other leasing agreements NACEPF has made with Sprint subsidiaries, NACEPF has renewed those agreements without giving notice of the renewal in any particular manner. For example, NACEPF has executed ITFS excess capacity airtime leases with Sprint subsidiaries for NACEPF's excess authorized spectrum capacity in Colorado Springs, Colorado; Fresno, California; Lansing, Michigan; Denver, Colorado; Santa Rosa, California; Columbus, Ohio; Seattle, Washington; and Yuba City, California. Like the Amendment at issue in this case, all of these agreements were amended by a Third Amendment effective as of May 30, 1997. The Third Amendments in the case of these other markets contained language identical to that contained in the Amendment. In every one of these other leases, the number of subscribers as of the Subscriber Date was below the specified threshold. In every one of these other contracts, NACEPF exercised its right to renew the lease for an Additional Renewal Term in the same manner it did in the case of the Agreement, has continued to make its monthly payments. (The Additional Renewal Terms began on the following dates in these cities: Colorado Springs -- August 6, 2001; Fresno -- September 24, 2001; Lansing -- March 27, 2002; Danver -- April 10, 2002; Santa Rosa -- August 14, 2002; Columbus -- October 10, 2002; Seattle -- October 28, 2002; Yuba City -- June 30, 2005.)

34. NACEPF relied on the course of conduct established with Sprint and its subsidiaries in renewing the Amendment applicable to Youngstown. It followed exactly the same practice in

renewing that Agreement in April 2003 as it had in renewing seven other ITFS excess capacity lease agreements with Sprint Subsidiaries in 2001 and 2002.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By its Attorneys,

Mark A. Pogue #3441
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2005 a copy of the foregoing Plaintiff's Local Rule 12.1 Statement was served by first class mail, postage prepaid to:

Wayne Dennison, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

Jennifer L. Brooks, Esq.
Brown Rudnick Berlack Israels LLP
One Providence Washington Plaza
Providence, RI 02903



PRV_762861_1/CFTURCOTTE