UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., Plaintiff, | : | |
| v. | : | No. 04-473-T |
| AMERICAN TELECASTING OF YOUNGSTOWN, INC., Defendant. | : | |

**NACEPF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO NACEPF'S MOTION FOR SUMMARY JUDGMENT**

NACEPF herewith replies to American's objection to NACEPF's motion for summary judgment. As shown below, American's objections do not raise any genuine issues of fact sufficient to preclude the entry of summary judgment for NACEPF.

## I. American Did Not Have The "Absolute Right" Not To Renew The Agreement

A key question presented by NACEPF's motion is which party had the ultimate right to extend or terminate the Agreement. In its opening papers, NACEPF argued that "Paragraph B(b) of the [Third] Amendment gives NACEPF the ultimate right to extend the Agreement through April 30, 2008."[1]

In its opposition brief, American repeatedly asserts that it had the "absolute right" not to renew the Agreement. Defendant's Memorandum Of Law In Support Of Its Objection to Plaintiffs Motion For Summary Judgment ("Def. Mem.") at 3, 5, 9-10. American cites to the

[1] "Memorandum In Support Of Plaintiff North American Catholic Educational Programming Foundation, Inc.'s Motion For Summary Judgment," at 7.

last sentence of Paragraph B(a) of the Third Amendment in support of this position. Id. at 3, 5, 9-10.

American's argument is misleading and incorrect. Paragraph B(a) of the Third Amendment – including its last sentence – deals only with the initial five-year renewal term of the Agreement, from May 1, 1998 through April 30, 2003. The last sentence of that paragraph gave American the absolute right not to renew the Agreement for that period.[2] NACEPF's attorney Howard J. Barr, who was personally involved in the negotiations over the Third Agreement, confirms this point. Supplemental Affidavit of Howard J. Barr, ¶ 4.

The period at issue in this motion is the "Additional Renewal Term," from May 1, 2003 through April 30, 2008, which is addressed in Paragraph B(b) of the Third Amendment. American did not have any "absolute right" not to renew the Agreement for that term. Rather, NACEPF retained the ultimate right to renew the Agreement for that term.

## II. The Agreement Did Not Require NACEPF To Take Some Affirmative Act To Exercise The Renewal Option

NACEPF demonstrated in its opening brief that it was not required to take any particular action in order to exercise its option to renew the Agreement. American disputes this. According to American, the Third Amendment "requires NACEPF to inform [American] of its decision to exercise the Renewal Option." Def. Mem. at 9.[3]

There is no support for American's argument that the Third Amendment either "required" or "contemplated" that NACEPF give any particular form of notice to American that it was renewing the Agreement. Paragraph B(b) is devoid of any language imposing such a duty. In

[2] The fact that this sentence pertains only to Paragraph B(a), and the initial renewal term, is apparent from the fact that the sentence gives American the right not to renew "notwithstanding any provision hereof" – that is, notwithstanding anything in Paragraph B(a). (emphasis added). To obscure this inconvenient fact, American carefully omits the word "hereof" when quoting the last sentence of Paragraph B(a). See Def. Mem. at 5, 10.

[3] Later, American asserts only that the Third Amendment "contemplates" that NACEPF provide such notice. Id.

contrast, Paragraph B(a) explicitly required American to serve written notice of its election to renew the Agreement.

Moreover, American admits in its opposition papers that it (or Sprint) continued to make monthly payments to NACEPF – after the Agreement supposedly "expired" on April 30, 2003 – in exactly the same amounts ($1,416.67 per month) that it had been making before. See Affidavit of Jennifer L. Crowder, ¶¶ 12, 13, 34, 46, 47.[4] These payments, quite understandably, signified to NACEPF that American understood that the Agreement had been renewed.[5] Since American was already making renewal payments, there was no reason for NACEPF to inform American explicitly that the Agreement had been renewed – especially since NACEPF was under no obligation to do so. Supp. Aff. John Primeau, ¶ 4.

## III. The Agreement Is Not Ambiguous

American asserts that the Third Agreement was "drafted by NACEPF's counsel." Def. Mem. at 3. NACEPF denies this. Supp. Barr Aff., ¶ 2. But the identity of the drafter is only material if the Third Amendment is ambiguous. Here, although American complains about a "run-on sentence" in Paragraph B(b) of the Third Amendment, Def. Mem. at 11, it nowhere asserts that the Amendment is ambiguous. The parties' dispute over the identity of the drafter is therefore irrelevant.

---

4 Crowder asserts, cryptically, that Sprint's post-April 30, 2003 payments were for American's "minimal use of NACEPF's ITFS excess capacity." Crowder Aff. ¶ 44.

5 Sprint never gave NACEPF any indication that it considered the Agreement to have changed to a month-to-month arrangement after April 30, 2003, or that it was paying only on a month-to-month basis. Supp. Barr Aff., ¶ 5.

## IV. American's Provision Of The Subscriber Information Was Untimely And Insufficient

American does not deny that its provision of the subscriber information called for in the Third Amendment was untimely. See Crowder Aff., ¶ 35. Instead, American seeks to excuse its breach on grounds that time was not of the essence. Def. Mem. at 12.

The case law cited by American establishes that, for time to be of the essence, "there must be some evidence from which such intent can be ascertained..."[6] Here, as NACEPF pointed out in its opening brief, there is such evidence: the parties agreed in the Third Amendment that American had to provide the subscriber information "no later than" ten days after the Subscriber Date. That language makes clear that, as to American's provision of subscriber information, time was of the essence.

Nor does American deny that it failed to provide the particular subscriber information specified in the Agreement. Id. at 12-13. Instead, American argues that the "deviation in the content of the subscriber information (monthly average versus single day total) could not be deemed material on these facts." Id.

This argument misses the point. NACEPF's ten-day exercise period was keyed to its receipt of the particular form of subscriber information described in the Amendment. Instead of sending NACEPF that particular information – which would have alerted NACEPF that its ten-day exercise period was opening – American merely sent the same "routine, boilerplate," multi-market summary that it had been sending to NACEPF every month. Primeau Aff., ¶ 13. Understandably, NACEPF did not understand American's sending of this boilerplate monthly form to trigger NACEPF's right to renew the Agreement. Id.; Supp. Primeau Aff., ¶ 4. That is why American's failure to provide the information specified in the Amendment was material.

6 Safeway Sys., Inc. v. Manuel Bros., Inc., 102 R.I. 136, 145 (1967).

## V. The Parties' Course Of Conduct Equitably Estops American From Denying That The Agreement Was Renewed

NACEPF argued in its opening brief that Sprint established a course of dealing with NACEPF in connection with the renewal of leases in other markets. In response, American presents a convoluted argument which attempts to distinguish its conduct with respect to the Youngstown market from its conduct with respect to the other markets during the additional renewal term. Def. Mem. at 15-17.

American's labors are not persuasive. After all is said and done, the following facts remain:

1. NACEPF followed exactly the same practice in renewing the Youngstown Agreement in April 2003 as it followed in renewing the other contracts.

2. Sprint continued to pay NACEPF monthly fees during the Additional Renewal Term, for both the Youngstown agreement and the other agreements, even though the subscriber base was below the specified threshold in those markets.

From NACEPF's perspective, notwithstanding whatever private motive Sprint had for viewing the Youngstown agreement differently than the other agreements, its actions were the same. American should therefore be estopped from denying that the Agreement was renewed.

## VI. Summary Judgment Is Appropriate Even If The Parties Disagree Over The Amount Of Damages Due

The Primeau Affidavit, submitted in connection with NACEPF's opening brief, demonstrates that, as of October 31, 2005, American owed NACEPF $67,375.31 pursuant to the Agreement. Primeau Aff., ¶ 20 and Exh. D. In her affidavit, Ms. Crowder takes issue with several aspects of Primeau's calculations. Crowder Aff., ¶ 56. Ms. Crowder does not, however,

state how much American believes it owed to NACEPF as of October 31, 2005 if the Agreement had been renewed.

American argues that "summary judgment is inappropriate" given the parties' apparent disagreement over the amount of damages. Def. Mem. at 17. This contention is clearly wrong. Fed. R. Civ. P. 56(c) provides that "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Or, as a leading commentator has stated, "when there is a genuine issue as to damages, but not as to the ultimate liability of the nonmoving party, an interlocutory summary judgment is appropriate." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2736.

In short, even if this Court concludes that there is a genuine issue as to the amount of damages owed to NACEPF, it should nonetheless grant summary judgment on liability, and schedule a hearing to resolve the question of damages.

## VII. American Has Waived Any Defense Based On The Amount In Controversy And, In Any Event, This Action Satisfies The Jurisdictional Amount For Federal Jurisdiction

American's final argument is that this action does not satisfy the amount in controvery requirement needed to establish jurisdiction in this Court.

This argument is defective for several reasons. First, American did not assert lack of subject-matter jurisdiction as an affirmative defense when it filed its Answer. It has therefore waived this defense.

Second, this lawsuit was filed more than one year ago. During that period, American has actively participated in this litigation without ever raising a challenge to the Court's jurisdiction.

For that reason, even if American had properly raised the jurisdictional amount as an affirmative defense in its Answer, that defense has now been waived.

In any event, NACEPF satisfies the $75,000 jurisdictional requirement necessary to invoke diversity jurisdiction in the federal courts. If the calculations in the Primeau Affidavit are accepted, then American owed NACEPF some $67,000 as of October 31, 2005, and will owe it many thousands more until the Agreement expires in 2008. That is easily enough to satisfy the jurisdictional amount requirement. On the other hand, American appears to argue that the total value of the Additional Renewal Term is $85,000.20, and that it has already paid $12,750.03, with the result that it will owe a total of $72,250.17 more. Def. Mem. at 18.

The amount that would be owed even pursuant to American's calculations - $72,250.17 - would satisfy the amount in controversy requirement because NACEPF asserted a claim for its attorney fees in the Complaint pursuant to R.I. Gen. Laws § 9-1-45. As this Court has stated:

> Unless a court can, on the basis of the pleadings, find the complaint or the opposition thereto completely meritless, the requested award must be added to the principal sum in deciding whether jurisdiction should be retained.

Billings & Co. v. Pine Street Realty Assoc. Ltd. Partnership, 754 F. Supp. 10, 14 (D.R.I. 1990). NACEPF submits that its Complaint cannot be deemed "completely meritless."[7] When NACEPF's attorney fees are added to the amount owed even under American's calculations, NACEPF's damages exceed $75,000.[8]

The case relied on by American in support of its jurisdictional amount argument, Department of Recreation and Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84 (1st

---

[7] If NACEPF's Complaint were completely meritless, it is unlikely that American would have required a 20-page brief and a 60-paragraph supporting affidavit to oppose its summary judgment motion.

[8] NACEPF represents that, after more than a year of litigation, its attorney fees exceed $2,750. The sum of $72,250.17 and $2,750 exceeds $75,000.

Cir. 1991) is not relevant. In that case the plaintiff did not plead a claim for attorney fees, as NACEPF has. Moreover, that case dealt exclusively with a Puerto Rico fee-shifting statute, and did not discuss or even mention Judge Pettine's ruling in Billings.

**Conclusion**

For the foregoing reasons, NACEPF's motion for summary judgment should be granted.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By its Attorneys,

Mark A. Pogue /SDD

Mark A. Pogue #3441
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of December, 2005 a copy of the foregoing NACEPF's Reply To Defendant's Memorandum of Law In Support of Its Objection To NACEPF's Motion For Summary Judgment was served by first class mail, postage prepaid to:

Wayne Dennison, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

Jennifer L. Brooks, Esq.
Brown Rudnick Berlack Israels LLP
One Providence Washington Plaza
Providence, RI 02903