UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC., | : | |
| Plaintiff, | : | |
| v. | : | No. 04-473-T |
| SPRINT CORPORATION and AMERICAN TELECASTING OF YOUNGSTOWN, INC., | : | |
| Defendants. | : | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") submits this supplemental memorandum of law pursuant to this Court's order dated December 14, 2005. As shown below, NACEPF's damage claim in this case exceeds $75,000, and is therefore sufficient to meet the jurisdictional requirements of 28 U.S.C. § 1332(a). NACEPF's claim for attorney fees can be included in its claim for damages, thus causing the amount in controversy to exceed $75,000. Moreover, wholly apart from its claim for attorney fees, NACEPF's damage claims meet the jurisdictional requirement on the basis of traditional breach of contract damages principles.

**Facts/Travel**

On November 8, 2004, NACEPF brought this action against Defendant American Telecasting of Youngstown, Inc. ("Sprint" or "Defendant") for breach of contract and

declaratory judgment.[1] This litigation arose out of an agreement entered into between the parties, entitled the ITFS Excess Capacity Airtime Lease Agreement (the "Agreement"), attached to the Complaint as Exhibit A. The initial Agreement ran for a five-year term from April 30, 1993 through April 30, 1998. Agreement, ¶ 1A.

In 1993, the FCC licensed NACEPF to use certain Instructional Television Fixed Service ("ITFS") channels and to lease excess capacity in their authorized spectrum to non-ITFS users like Sprint. Affidavit of John Primeau, ("Primeau Aff."), ¶ 3. Under the Agreement, NACEPF leased certain of its excess capacity to Sprint in exchange for the payment of transmission and subscriber fees. Agreement, ¶ 6. Sprint agreed to pay NACEPF a transmission fee of $1,000 per month and a monthly subscriber fee of $0.20 per subscriber, with a minimum commission of $5,000 per year. See Second Amendment to the ITFS Excess Capacity Airtime Lease Agreement ("Second Amendment"), attached to the Affidavit of Jennifer Crowder as Ex. A. In 1997, the parties executed the Third Amendment to ITFS Excess Capacity Airtime Lease Agreement (the "Third Amendment"), attached to the Complaint as Exhibit B. Under the terms of the Third Amendment, the Agreement was renewed by NACEPF for a period of five (5) years, commencing on May 1, 2003 and ending on April 30, 2008. Primeau Aff., ¶ 17.

In September 1999, American Telecasting of Youngstown, Inc. became a wholly owned subsidiary of Sprint Corporation. See Second Supplemental Affidavit of John Primeau ("Primeau Supp. Aff."), ¶ 3. The Agreement provides that the "Lessee is in the business of providing subscription television programming to its paying customers via microwave transmission known as Wireless Cable and is desirous of leasing excess ITFS capacity." Agreement at 1. After Sprint Corporation acquired American, however, the subscriber base for

---

[1] NECEPF initially entered into a contract with American Telecasting of Youngstown, Inc ("American"). In 1999 Sprint Corporation acquired American as a wholly owned subsidiary. See Second Supplemental Affidavit of John Primeau, ¶ 3.



PRV_778464_2/JFOLGERHARTWELL

the Youngstown, Ohio market – the subject area of the Agreement – steadily declined. See Primeau Supp. Aff., ¶ 6. For example, when Sprint Corporation acquired American, the average subscriber count was 2,964. Id., ¶ 5. By January 2003, it had dwindled to 1,616. Id., ¶ 6.

On December 14, 2005 this Court heard NACEPF's motion for summary judgment and thereafter issued an order requesting that the parties submit supplemental briefs on the topic of whether the amount in controversy meets the jurisdictional requirement of § 1332(a). NACEPF submits that, as a result of Sprint's breach of contract, NACEPF has suffered damages in excess of $75,000. As such, jurisdiction is proper under § 1332 and the Court may rule on NACEPF's pending motion for summary judgment.

## Argument

Section 1332(a) provides, in pertinent part, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."[2] In determining whether an amount in controversy meets the jurisdictional requirements of § 1332(a), the sum the plaintiff asserts in the complaint generally controls. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001); Watch Hill Partners, Inc. v. Barthel, 338 F. Supp. 2d 306, 309 (D.R.I. 2004). A plaintiff's general assertion that the amount in controversy meets the jurisdictional minimum is sufficient, unless it is questioned by the opposing party or by the court. Spielman, 251 F.3d at 5; Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991). Indeed, "it must appear to a legal certainty that the sum is really for less than the jurisdictional amount to justify dismissal." Spielman, 251 F.3d at 5 (emphasis added). If a challenge to the amount in controversy is made, then the plaintiff must set forth facts with

[2] It is undisputed that the parties meet the diversity requirement of 28 U.S.C. § 1332(a)(1).

sufficient particularity to prove that "it is not a legal certainly that the claim involves less than the jurisdictional amount." See Spielman, 251 F.3d at 5 (quoting Dep't of Recreation, 942 F.2d at 88). A plaintiff can fully satisfy this burden by showing, through affidavits or otherwise, that no such legal certainly exists. See, e.g., Spielman, 251 F.3d at 5; Hardemon v. City of Boston, No. 97-2010, 1998 WL 148382, at *3 (1st Cir. Apr. 6, 1998); Dep't of Recreation, 942 F.2d at 88.

In this case, NACEPF satisfies the amount in controversy requirement in two ways.

## I. Sprint's Admissions, Together With NACEPF's Attorney Fees Claim, are Sufficient to Confer Jurisdiction.

Even when viewing the facts in the light most favorable to Sprint, NACEPF's claims meet the jurisdictional requirements of § 1332 by virtue of its claim for attorney fees. Sprint asserts in its memorandum in opposition to NACEPF's motion for summary judgment that NACEPF's damages in this case are $60,000 in transmission fees and $25,000 in subscriber commissions, totaling $85,000. See Defendant's Memorandum of Law in Support of Its Objection to Plaintiff's Motion for Summary Judgment ("Defendant's Brief") at 3. Sprint further asserts that it has already paid NACEPF $12,750, with the result that NACEPF's maximum possible recovery is $85,000 less $12,750, or $72,250. See Defendant's Brief at 6 ("All told, following the last payment due NACEPF under the Lease, ATY made nine payments of $1416.67 (or 12,750.03) to NACEPF."). Thus, according to Sprint, NACEPF is short by $75,000 minus $72,250, or $2,750.

Even assuming these figures are accurate – and they are not – NACEPF's damages exceed $75,000. Courts recognize two exceptions to the general rule that attorney fees are not considered in calculating the amount in controversy for jurisdictional purposes: (1) when attorney fees are provided for by contract; or (2) when attorney fees are mandated by statute.

 PRV_778464_2/JFOLGERHARTWELL

Spielman, 251 F.3d at 7; Dep't of Recreation, 942 F.2d at 89; Billings & Co. v. Pine Street Realty Assocs. Ltd. P'ship, 754 F. Supp. 10, 13 (D.R.I. 1990).

In Billings, 754 F. Supp. at 13, the plaintiff alleged in its complaint that it was entitled to its damages "plus interest, costs and attorney fees pursuant to R.I.G.L. 9-1-45." The Court noted the two above-referenced exceptions and reasoned that, under § 9-1-45, attorney fees are permitted if the Court finds that there is "a complete absence of a justiciable issue of either law or fact raised by the losing party." Id. (quoting § 9-1-45). The Court held, therefore, that under Rhode Island law, "unless a court can, on the basis of the pleadings, find the complaint or the opposition thereto completely meritless, the requested award must be added to the principle sum in deciding whether jurisdiction should be retained." Id. at 14 (emphasis added).

Sprint asserts in its brief that NACEPF has failed to allege sufficient damages in this case because "except for a bare request in its Complaint for attorney fees pursuant to R.I. Gen. Laws § 9-1-45, NACEPF has not alleged any facts supporting an award of fees, nor has [it] provided an estimate of such fees." See Defendant's Brief at 19. What Sprint fails to recognize, however, is that, absent Sprint's jurisdictional challenge, NACEPF's allegations in the Complaint are sufficient to establish the amount in controversy. See Horton, 367 U.S. at 353; Spielman, 251 F.3d at 5; Watch Hill Partners, Inc., 338 F. Supp. 2d at 309. It was not until jurisdiction was challenged that NACEPF was required to submit additional support for its damages claim. See Spielman, 251 F.3d at 5; accord Hardemon, 1998 WL 148382, at *5 (plaintiff's statement alleging he was entitled to backpay, submitted in an affidavit filed in opposition to the defendant's motion to dismiss was sufficient to permit the court to consider the backpay amount when determining the aggregate amount in controversy for jurisdictional purposes).

NACEPF has met this burden by submitting John Primeau's second supplemental affidavit in support of its claim for damages. See, e.g., Spielman, 251 F.3d at 5; Hardemon, 1998 WL 148382, at *3; Dep't of Recreation, 942 F.2d at 88. Primeau's second supplemental affidavit clearly sets forth the damages claimed in this matter. See Primeau Supp. Aff., ¶ 6. In particular, Primeau avers that NACEPF's attorney fees claim, at the time the Complaint was filed, exceeded $2,750.00. Id., ¶ 7. Thus, even assuming, *arguendo,* that Sprint's estimation of NACEPF's maximum recoverable damages is correct, NACEPF satisfies the amount in controversy requirement.[3]

Moreover, in his second supplemental affidavit, Mr. Primeau asserts the factual basis for NACEPF's claim for attorney fees; namely, that "NACEPF is entitled to recover its attorney fees under R.I. Gen. Laws § 9-1-45 because there is a complete absence of justiciable issue of law or fact in this case," incorporating by reference the arguments set forth in NACEPF's memorandum in support of its motion for summary judgment and Mr. Primeau's previous two affidavits. Primeau Supp. Aff., ¶ 9. As such, NACEPF – through the short and plain statement in its Complaint that it is entitled to attorney fees under § 9-1-45, and the facts set forth in Mr. Primeau's second supplemental affidavit – has more than met its burden of showing that "it is not a legal certainly that the claim involves less than the jurisdictional amount." See Spielman, 251 F.3d at 5 (quoting Dep't of Recreation & Sports, 942 F.2d at 88).

In support of its claim that NACEPF has submitted insufficient evidence of damages, Sprint relies on Dep't of Recreation. The holding in Dep't of Recreation, however, is not instructive in the instant case. Unlike NACEPF, the plaintiff in Dep't of Recreation, 942 F.2d at 89, did not assert a claim for attorney fees until the case was on appeal. As the court noted:

---

[3] According to Sprint, NACEPF falls short of the $75,000 jurisdictional amount by $2,750. Since NACEPF's attorney fees at the time this action was filed exceeded $2,750, the amount in controversy is satisfied.

> The [plaintiff] never averred in its complaint or elsewhere that it was entitled to attorney's fees under Commonwealth law. And it never mentioned that those fees constituted part of the amount in controversy, either in its statement of disputed facts responding to the motion for summary judgment, or in its affidavits or depositions.

Id. (emphasis added). In fact, in Dep't of Recreation, 942 F.2d at 89, the only evidence that the plaintiff was asserting a claim for attorney fees was a vague statement by a witness in a deposition that the damages included the costs of resolving the matter. The court reasoned, therefore, that "because the appellant's complaint does not contain 'a short and plain statement of the statutory penalty claim showing that the pleader is entitled to relief' the amount in controversy . . . does not exceed [the jurisdictional minimum]." Id.

Here, NACEPF included a claim for attorney fees in its Complaint. Moreover, to the extent that Dep't of Recreation imposes a duty on plaintiffs to explain the basis for a claim for attorney fees, the First Circuit makes clear that the explanation can be given either in the Complaint or in "its affidavits or depositions." Id. Mr. Primeau's second supplemental affidavit provides ample details in support of NACEPF's attorney fees claim. This affidavit, together with the fact that NACEPF asserted its attorney fees claim in the Complaint, satisfies whatever additional requirements Dep't of Recreation imposes on plaintiffs such as NACEPF, which include attorney fees as part of the amount in controversy.

## II. The Amounts Due Under the Agreement are Sufficient to Confer Jurisdiction.

Even without considering NACEPF's attorney fees, the amounts due NACEPF under the Agreement meet the jurisdictional requirements of § 1332. Under Rhode Island law, the traditional measure of damages in a breach of contract action is that which is necessary to place the plaintiff in as good a position as it would have been had the contract been fully performed.

E.g., Guzman v. Jan-Pro Cleaning Systems, Inc., 839 A.2d 504, 508 (R.I. 2003); Nat'l Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985); R.I. Turnpike & Bridge Auth. v. Bethlehem Steel Corp., 379 A.2d 344, 357 (R.I. 1977). To recover such damages the plaintiff need only establish the loss to a reasonably degree of certainly. Guzman, 839 A.2d at 508. Courts have held that a prevailing party in a breach of contract action is entitled to the commissions it would have earned under the contract in question, if the opposing party had not breached the agreement. See LDCircuit, LLC v. Sprint Commc'ns Co., 364 F. Supp. 2d 1246, 1263 (D. Kan. 2005); Regency Commc'ns, Inc. v. Cleartel Commc'ns, Inc., 304 F. Supp. 2d 1, 6 (D.D.C. 2004).

Here, NACEPF is entitled to the subscription fees and monthly transmission fees that Sprint should have paid under the Agreement. Sprint allowed the number of Youngstown subscribers to dwindle from more than 2,900 at the time it acquired the business to some 1,616 in February 2003. See Primeau Supp. Aff., ¶ 5-6. Because Sprint did not engage "in the business of providing subscription television programming to its paying customers," as contemplated by the Agreement, NACEPF is entitled to subscriber commissions based on the average number of subscribers that existed at the time of Sprint's acquisition of American (2,964), before Sprint allowed the subscriber numbers to decline.

The Agreement provides that NACEPF is to be paid $1,000 per month in transmission fees over the life of the five-year contract. Agreement, Ex. D, ¶ 2. The Agreement also provides that Sprint is to pay NACEPF a $0.20 commission for each subscriber. Second Amendment, ¶ 1(B). The average number of subscribers in September 1999, when Sprint Corporation acquired American, was 2,964 and this is the figure that should be used to project NACEPF's lost subscriber fees. See Primeau Supp. Aff., ¶ 5.

Therefore, NACEPF is entitled to subscriber fee payments equal to $592.80 per month (2,964 x $0.20). It is also entitled to transmission fees of $1,000 per month. Over a five-year term, the sum of the monthly transmission fees and the monthly subscriber fees equals $1,592.80 x 60, or $95,568. Assuming, as Sprint alleges, that NACEPF has already received $12,750, then NACEPF's damages amount to $95,568, less $12,750, or $82,818, a figure that more than exceeds § 1332(a)'s jurisdictional requirement – even without the inclusion of NACEPF's attorney fees.

## Conclusion

For the foregoing reasons, NACEPF has satisfied the amount in controversy element of federal diversity jurisdiction, and this Court should retain jurisdiction over this action.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By its Attorneys,

Mark A. Pogue (#3441)
Jillian S. Folger-Hartwell (#6970)
EDWARDS ANGELL PALMER &
DODGE, LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of January, 2006 a copy of the foregoing Supplemental Memorandum In Support of Plaintiff's Motion For Summary Judgment was served by first class mail, postage prepaid to:

Wayne Dennison, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

Jennifer L. Brooks, Esq.
Brown Rudnick Berlack Israels LLP
One Providence Washington Plaza
Providence, RI 02903

______________________________