**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.<br>Plaintiff, | ) | |
| v. | ) | Case No. 04-473T |
| AMERICAN TELECASTING OF YOUNGSTOWN, INC.,<br>Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S SUPPLEMENTAL**
**MEMORANDUM CONCERNING FEDERAL JURISDICTION**

Defendant American Telecasting of Youngstown, Inc. ("ATY")[1] hereby replies to Plaintiff's supplemental memorandum concerning jurisdiction. In its supplemental memorandum and "supporting" *Second Supplemental Affidavit of John Primeau*, Plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") claims that 28 U.S.C. § 1332(a) provides jurisdiction over this diversity action because the amount in controversy is not less than $75,000. NACEPF's claim is, however, entirely belied by: (1) established First Circuit precedent; (2) NACEPF's judicial admissions and prior sworn statements; and (3) the language of the contract that NACEPF seeks to enforce. NACEPF's claim should therefore be rejected and this case dismissed.

## I. BACKGROUND

Through this action, NACEPF seeks a declaration that its ITFS Excess Capacity Airtime Lease Agreement (the "Agreement" or "Lease") with ATY remains in force through April 30,

1 Sprint Corporation ("Sprint") was initially, but erroneously, named as an additional defendant in this case. On August 16, 2005, Sprint was dismissed from this action without prejudice by agreement of the parties. *Docket*, Entry No. 9.

2008 (the so-called "Additional Renewal Term"), an award of damages (in an amount to which NACEPF has inconsistently averred), and an award of attorneys' fees under R.I. Gen. Laws § 9-1-45.

NACEPF's Complaint does not allege the amount of its damages, the amount of its attorney's fees or even that the amount in controversy exceeds $75,000. Instead, NACEPF merely alleges that this Court enjoys jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Complaint, however, also contains a series of critical (in fact, here dispositive) judicial admissions with respect to damages. NACEPF unequivocally admits that following the Renewal Term of the Agreement, "Sprint continued to pay NACEPF the amounts due under the Amendment through January 2004," that "Sprint made at least nine monthly payments to NACEPF pursuant to the Agreement," and that "NACEPF accepted all of Sprint's payments." *Complaint,* ¶¶ 14 and 17 (emphases added).[2]

A total monthly payment of $1416.67 is the amount that NACEPF admits in its Complaint to have "accepted" as the "the amount[] due under the Amendment" and to have been paid "at least nine" times "pursuant to the Agreement." *Affidavit of Jennifer L. Crowder* ("Crowder Aff."), ¶¶ 34 and 56.[3] The math here is therefore straightforward. Over the five-year

[2] NACEPF must be bound be its judicial admissions. *Schott Motorcycle Supply v. AM Honda Motor Co.*, 976 F.2d 58 (1st Cir. 1992) ("a party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding.").

[3] The Agreement initially provided that NACEPF was to be compensated through a flat $1,000 per month Transmission Fee, a $5,000 per year Programming Fee, and, for those months in which there were in excess of ten-thousand (10,000) monthly subscribers to ATY's wireless cable service, a $0.10 per month per subscriber Subscriber Royalty Fee. *Agreement*, ¶¶ 6 (B) and (C), p. 18, ¶ 7 (B), p. 21 and Exhibit D, p. 42. Through a second amendment, the annual Programming Fee was changed to require payment to NACEPF of the greater of "five thousand dollars ($5,000.00) or the monthly subscriber fee of twenty (.20) [sic] per subscriber." *Second Amendment*, ¶ 1 (B), p. 1. There is no dispute here that subscriber levels have never been sufficient to require payment of a Subscriber Royalty Fee. Thus, payments to NACEPF under the Agreement consisted of the monthly Transmission Fee of $1000 and, for a time, a variable Programming Fee based on subscriber levels. ATY has averred (and NACEPF does not dispute) that "[s]ince September 2001, the number of monthly subscribers to [ATY]'s services has never exceeded 2,083," and that "[a]ccordingly, through the end of the Renewal Term of the Lease, Sprint

Additional Renewal Term that NACEPF claims, it would receive 60 monthly payments totaling $85,000, of which at least nine payments of $1416.67 (or $12,750.03) NACEPF admits to having already been paid and accepted. Accordingly, NACEPF has admitted that its damages here total no more than $72,249.97, exclusive of attorneys' fees.

## II. ANALYSIS

### A. THE COMPLAINT SHOULD BE DISMISSED.

#### 1. NACEPF's Attorneys' Fee Claim Is Meritless.

The Agreement contains no provision for fee-shifting in the event of a dispute. NACEPF's attorneys' fees claim therefore rests solely on R.I. Gen. Laws, § 9-1-45, which authorizes a fee award only when the Court: "(1) [f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or (2) [r]enders a default judgment against the losing party." R.I. Gen. Laws § 9-1-45. However, a potential award under R.I. Gen. Laws § 9-1-45 should not be considered in determining whether there is a sufficient amount in controversy to confer federal jurisdiction. In any event, the Rhode Island fee-shifting statute clearly has no application here.

Attorney fees are, of course, generally excluded in determining the amount in controversy, except where fees are provided for by contract, or where a statute mandates or allows the payment of such fees. *Velez v. Crown Life Ins. Co.*, 599 F.2d 471 (1st Cir. 1979). More than 15 years ago, this Court (Pettine, J.) considered a potential award of fees under R.I. Gen. Laws § 9-1-45 and held that attorney fees may be added to the principle sum in deciding the amount in controversy unless "a court can, on the basis of the pleadings, find the complaint

---

provided NACEPF with monthly Programming Fee payments of $416.67, an amount that is one-twelfth of the annual minimum Programming Fee payment of $5000." *Crowder Aff.*, ¶ 34. The $416.67 monthly Programming Fee together with the $1000 monthly Transmission Fee resulted in monthly payments to NACEPF totaling $1416.67.

or the opposition thereto completely meritless." *Billings & Co., Inc. v. Pine Street Realty Assoc. Ltd. Partnership*, 754 F.Supp. 10, 13-14 (D.R.I. 1990). This holding does not, however, appear to reflect the current rule.

As this Court has recognized, it now bears a "responsibility to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 1991). The rule in *Billings*, by contrast, suggests a near abdication of that responsibility. R.I. Gen. Laws § 9-1-45 is a fee-shifting statute that has very limited application. Only where a defendant has been defaulted or has no possible defense will it be deemed to apply. Nevertheless, given the substantial attorneys' fees that now attend to almost all federal civil litigation, *Billings* would confer federal jurisdiction in nearly every diversity case through mere reference to R.I. Gen. Laws § 9-1-45 in a non-frivolous complaint. In other words, the fee-shifting statute, although very rarely applicable, would greatly expand the scope of federal jurisdiction and thereby broadly circumvent the rule established by Congress requiring that $75,000 be at issue in diversity actions.

*Department of Recreation and Sports of Puerto Rico v. World Boxing Ass'n*, 942 F.2d 84 (1st Cir. 1991), decided shortly after *Spielman*, strongly suggests a contrary result. In *World Boxing*, the First Circuit questioned but chose not to reach whether the fee-shifting statute there at issue (a direct analog to § 9-1-45), was "the sort of statute or rule which comes within the *Velez* exception" to the general rule excluding attorneys' fees from the determination of the amount in controversy. *Id.*, at 90. The Court, however, reiterated the requirement that "the party claiming a right to federal jurisdiction in some manner must demonstrate entitlement under contract or statute to the recovery of such fees." *Id.*, at 89 (emphasis added). Ultimately, because the plaintiff failed to provide a factual basis to support an award of fees, to otherwise demonstrate "that its situation fell within the meaning of the rule" or to include on the record an

estimate of such fees, the Court held there was no basis to count the potential award of fees toward the jurisdictional amount. *Id.,* at 90 (emphasis added).

Here, NACEPF has done nothing more than allege that there is no justiciable issue in this case. Although it has now asserted that its fees exceed $2,750, NACEPF has not made and cannot make any demonstration that there is no contestable issue here. Merely raising the allegation (or including this legal conclusion in one of the myriad, fundamentally contradictory Primeau affidavits) is insufficient under *World Boxing*. Moreover, the record is clear as a matter of law that there are, in fact, triable issues here. As discussed *infra*, NACEPF (through Primeau) has now sworn to three entirely different and mutually exclusive damage calculations – two of which bear literally no relation to the language of the Agreement that NACEPF seeks to enforce. That there is a justiciable issue here with respect to NACEPF's alleged damages is indisputable. The summary judgment record also provides an ample demonstration of a justiciable issue with respect to the alleged automatic renewal of the contract. Finally, even in the absence of any other disputable claim, ATY has raised a justiciable issue as to NACEPF's claim of federal jurisdiction.

Given the record before this Court, even if it were to reach the conclusion that R.I. Gen. Laws § 9-1-45 is the "sort of statute or rule which comes within the *Velez* exception," it is a legal certainty that NACEPF will not be entitled to attorneys' fees under R.I. Gen. Laws § 9-1-45.[4] Therefore, a potential fee award may not be considered in determining the amount in controversy for jurisdictional purposes and this case should be dismissed.

---

[4] This is especially true where, as here, plaintiff's own submissions are contradictory and raise a triable issue with respect to damages.

### 2. NACEPF's New Contract Damages Claim is Both Meritless and Sanctionable.

In its supplemental memorandum, NACEPF asserts for the first time that its damages must be determined based on a monthly subscriber count of 2,964 – the average number of ATY subscribers at the time ATY was acquired by Sprint. This assertion is meritless on numerous grounds.

First, and most important, NACEPF is bound by the judicial admissions in its Complaint with respect to damages and cannot now conveniently manufacture a new damages claim as a means to avoid dismissal of this action. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994); *Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D. Mass. 1997) ("contradictory matter in affidavit must be stricken"); *Schott Motorcycle Supply v. AM Honda Motor Co.*, 976 F.2d 58 (1st Cir. 1992) ("a party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding.").

The *Second Supplemental Affidavit of John Primeau*, dated January 9, 2006, both contravenes the judicial admissions of NACEPF's complaint and directly contradicts Primeau's own prior sworn statements to this Court. In its Complaint, NACEPF unequivocally admits that following the Renewal Term of the Agreement, "Sprint continued to pay NACEPF the amounts due under the Amendment through January 2004," that "Sprint made at least nine [minimum] monthly payments to NACEPF pursuant to the Agreement," and that "NACEPF accepted all of Sprint's payments." *Complaint,* ¶¶ 14 and 17 (emphases added). Primeau now swears that "NACEPF's lost subscription fees should be based on the level of subscribers as of September 1999 (2,964) – when Sprint first acquired [ATY] – rather than on the level at some later time, after the subscriber base dwindled" and now further swears to damages totaling "$95,568" for the 60-month period of the alleged extension. *Primeau Second Supp. Affd.*, ¶ 6. However, in the

*Affidavit of John Primeau*, dated October 21, 2005, Primeau swore to an entirely different damage calculation and damage total. In that affidavit (submitted in conjunction with a motion for summary judgment with respect to both liability and damages), Mr. Primeau swore that the "monthly programming fee was determined by multiplying the subscriber count (7,882) by .2" and that "[a]s [attached] Exhibit D, shows, the total of these components is $2,576.40 per month" or "$154,584.00" for the "Renewal Term." *Primeau Affd.*, ¶ 20 and Exhibit D.[5] The allegations of the Complaint control. There is just $72,249.97 at issue in this case.

Second, the theory on which NACEPF's new damage calculation rests is itself meritless and utterly devoid of support in the Agreement. NACEPF now claims that Sprint's acquisition of ATY and other business interests resulted in a diminution in the number of subscribers to ATY's system and that NACEPF should therefore be compensated at the subscription level that immediately pre-dated the Sprint acquisition.[6] The Agreement, however, contains nothing that requires either Sprint or ATY to continue "the business of providing subscription television programming to its paying customers" and, most certainly, not to provide such programming for two five-year renewal periods beyond its initial term. Instead, during the term of the Agreement,

---

[5] "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). The conflict between the judicial admissions of the Complaint with respect to damages and the contradictory sworn Primeau affidavits could not be clearer or more convincing. Here, NACEPF and its President, Primeau, have told this Court three different things (all binding, two under oath) with respect to NACEPF's alleged damages. Perhaps most troubling, in connection with its summary judgment motion, NACEPF provided a damage calculation that, given the *Second Supplemental Affidavit of John Primeau*, NACEPF knew to grossly overstate the alleged financial benefit of the further renewal of the Agreement. Now, apparently acknowledging that the damages claimed in the first Primeau affidavit have no basis in the language of the Agreement, Primeau swears to a new number and a new calculation in an attempt to avoid dismissal. Should this Court decline to dismiss on jurisdictional grounds, dismissal on the merits or other appropriate sanction is warranted on these facts. Among the other sanctions available to this Court is, of course, an order requiring NACEPF to pay ATY's attorneys' fees with respect to the summary judgment motion. Fed. R. Civ. P. 56(g).

[6] In fact, given ATY's financial position at the time of the Sprint acquisition, the likelihood that NACEPF would have received payment through the end of the Renewal Term was low. ATY was then contemplating bankruptcy. Thus, rather than impairing NACEPF's revenues under the Agreement, the Sprint acquisition of ATY likely preserved them.

as extended, ATY was merely required to compensate NACEPF based on its subscription levels. NACEPF's "protection" against a failure of ATY to grow its business or attract new customers to its services was the minimum payments provided under the Agreement during its term.

Ultimately, the renewal provision here at issue (and that NACEPF allegedly seeks to enforce) is in complete conflict with NACEPF's new damages claim. Under the Agreement, as amended, unless ATY's subscriber levels had doubled since January 31, 1997, NACEPF could choose not to provide the Additional Renewal Term.[7] In other words, if ATY did not grow its business (or continue in the same business), the Agreement permitted NACEPF to simply walk away from further involvement with ATY in May 2003.

Incredibly, NACEPF apparently now claims compensation for subscribers that it knew that ATY did not have at the time NACEPF allegedly chose to renew the Agreement. The alleged further renewal that NACEPF seeks to enforce occurred more than three years after the Sprint acquisition. At which time, NACEPF knew of ATY's actual – much diminished – subscriber numbers and had been receiving the minimum payments provided under the Agreement <u>for years</u> prior to the alleged renewal. NACEPF's new claim both makes no sense and finds no support in the language of the Agreement.[8]

**3. ATY Has No Subscribers.**

Finally, during the hearing on NACEPF's motion for summary judgment, this Court inquired about the possibility of ATY eventually expanding its subscription levels such that compensation in excess of the minimum payments may be due NACEPF. ATY is, however, out

---

[7] NACEPF's option here was, nevertheless, subject to ATY's "absolute right not to renew." *Third Amendment*, ¶ 1 (B)(a).

[8] The damages calculation to which Primeau swore in his prior affidavit is equally ridiculous. Primeau's calculation inexplicably assumes a subscriber count of 7,882 in every month of the alleged Additional Renewal Term. There is simply no arguable basis in fact for use of this grossly inflated subscriber count for each of the 60 months of the alleged renewal term. *See Crowder Affd.*, ¶ 37 (number of subscribers has never approached 7,882).

of the business of providing subscription wireless cable services in Youngstown, Ohio and therefore has no subscribers. *Crowder Affd*, ¶ 50. NACEPF has not disputed and cannot dispute this fact and the mere possibility that ATY could again offer subscription wireless cable services is insufficient to establish damages sufficient to confer jurisdiction.

"Events occurring subsequent to the institution of suit" do not generally affect jurisdiction. *See Spielman*, 251 F.3d at 5 (addressing subsequent events that diminish a potential damage award). Moreover, "[a] finding of amount in controversy . . . cannot be based upon a mere possibility of future harm." *Food Fair Stores v. Food Fair*, 177 F.2d 177, 184 (1st Cir. 1949). Instead, " a present probability" is required. *Id.* ("[t]he distinction to be observed is the familiar one between a probability and a possibility . . . .").

Here, there is simply no "present probability" that ATY will both return to the line of business contemplated by the Agreement (subscription wireless cable services) <u>and</u> then expand that business sufficiently so as to require compensation to NACEPF in excess of the monthly minimum payments. ATY's prior effort resulted in years and years of declining subscription levels and ultimately compelled a complete retreat from a cable television services market that in the intervening years has become even more competitive due to the availability of satellite television services and the high-speed access to the internet offered by a number of wired cable systems.

## III. CONCLUSION

WHEREFORE, defendant American Telecasting of Youngstown, Inc. respectfully requests that this Court dismiss this action on jurisdictional grounds.

**AMERICAN TELECASTING OF YOUNGSTOWN, INC.,**
By its attorneys,

**BROWN RUDNICK BERLACK ISRAELS LLP**
Jennifer L. Brooks (Bar #6176)
Wayne F. Dennison (admitted *pro hac vice*)
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Facsimile

Dated: January 30, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2006 I sent this document via first class mail, postage prepaid, to Mark A. Pogue, Esq., Edwards & Angell, LLP, 2800 Financial Plaza, Providence, RI 02903.

Jennifer L. Brooks