UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,
Plaintiff,

v. CA 04-473 T

SPRINT CORPORATION[1] and AMERICAN TELECASTING OF YOUNGSTOWN, INC.,
Defendants.

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Plaintiff's Motion for Summary Judgment (Document ("Doc.") #10) ("Motion for Summary Judgment" or "Motion"). Defendant American Telecasting of Youngstown, Inc. ("ATY"), has filed an objection to the Motion. See Defendant's Objection to Plaintiff's Motion for Summary Judgment (Doc. #17) ("Defendant's Objection"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was conducted on December 14, 2005.

After listening to the arguments of counsel and reviewing the filings in the action, the Court determined that there was a question as to whether "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs ...," 28 U.S.C. § 1332(a), and directed the parties to file supplemental memoranda addressing this jurisdictional issue, see Order for

[1] Defendant Sprint Corporation ("Sprint") was dismissed without prejudice from this action on August 16, 2005, by agreement of the parties. See Stipulation of Dismissal as to Defendant Sprint Corporation (Document ("Doc.") #9).

Further Briefing dated December 14, 2005 (Doc. #29) ("Order of 12/14/05"), at 1-2. The Court further stated that after it had received the memoranda, it would decide whether it wished additional oral argument on the issue of jurisdiction or whether it would proceed to decide the matter based on the parties' filings. See Order of 12/14/05 at 2.

Having reviewed the supplemental memoranda, the Court has concluded that no further hearing is necessary. For the reasons stated herein, I recommend that the matter be dismissed for lack of subject matter jurisdiction.

**Facts and Travel**

Plaintiff North American Catholic Educational Programming Foundation, Inc. ("Plaintiff" or "NACEPF"), is a Rhode Island corporation with a principal place of business in Providence, Rhode Island. Complaint (Doc. #1) ¶ 2. NACEPF is an independent lay organization engaged in producing and broadcasting religious and educational programming for television and radio pursuant to licences issued by the Federal Communications Commission ("FCC"). Id.; Plaintiff's Local Rule 12.1[2] Statement (Doc. #11) ("Plaintiff's SUF") ¶ 1. Defendant ATY is a wholly owned subsidiary of Sprint Corporation ("Sprint"). Complaint ¶ 4; Plaintiff's SUF ¶ 3. Plaintiff states that, "[u]pon information and belief, [ATY] is incorporated and has a principal place of business in a state other than Rhode Island." Complaint ¶ 4.

The FCC authorizes licensees to lease excess capacity in their authorized spectrums to users who are not themselves licensees for Instructional Television Fixed Service ("ITFS") channels. Plaintiff's SUF ¶ 5. On or about December 3, 1991, NACEPF and ATY entered into an "ITFS Excess Capacity Airtime Lease Agreement" ("Agreement"). Complaint ¶ 6; Plaintiff's SUF ¶

---

[2] Local Rule 12.1 has been superceded by DRI LR Cv 56.

4; see also Complaint, Exhibit ("Ex.") A (Agreement). NACEPF and ATY executed the Agreement to allow ATY to lease excess capacity from NACEPF for commercial programming. Plaintiff's SUF ¶ 6. The Agreement specified that its term would begin when the FCC licensed NACEPF to operate ITFS television channels in the Youngstown, Ohio, market. Id. ¶ 7; see also Complaint, Ex. A (Agreement). The FCC granted NACEPF an ITFS license in the Youngstown market on April 30, 1993. Plaintiff's SUF ¶ 8. Thus, the initial five-year term of the Agreement ran from April 30, 1993, to April 30, 1998. Id. ¶ 9.

On May 30, 1997, NACEPF and ATY executed a document captioned "Third Amendment to ITFS Excess Capacity Airtime Lease Agreement" ("Third Amendment"). Complaint ¶ 9; Plaintiff's SUF ¶ 10; see also Complaint, Ex. B (Third Amendment). The Third Amendment revised the renewal provisions contained in the Agreement. Plaintiff's SUF ¶ 10. According to the Third Amendment:

> (a) Provided Lessee's rights have not been terminated pursuant to Paragraph 9(a), this Agreement shall automatically and without further notice be extended for one (1) additional term (such additional term is hereinafter referred to as the "Renewal Term") of five (5) years unless and until Lessee shall have served written notice on Lessor at least sixty (60) days prior to the expiration date of the Initial Term that Lessee elects not to renew this Agreement for the Renewal Term. It is acknowledged and agreed that Lessee shall have the absolute right not to renew this Agreement notwithstanding any provision hereof to the contrary.

Complaint, Ex. B (Third Amendment) ¶ 1(B)(a). Pursuant to the provisions of the Third Amendment, see Plaintiff's SUF ¶¶ 11-12, the Agreement was renewed for a period of five years, beginning on April 30, 1998, and ending on April 30, 2003, id. ¶ 12.

The Third Amendment further provided that:

> (b) Unless terminated pursuant to any applicable

> provision of the Agreement, this Agreement shall automatically and without further notice be extended for an additional renewal term (the "Additional Renewal Term") of five (5) years, unless the number of Subscribers to Lessee's System, as of the day that is ninety (90) (the "Subscriber Date") days prior to the expiration date of the Renewal Term, does not equal or exceed 7,882 (the number of Subscribers to Lessee's System as of January 31, 1997, multiplied by a factor of two (the "Subscriber Multiple")), in which event, the Agreement shall expire at the end of the Renewal Term unless Lessor, at its sole option and discretion, elects to renew the Agreement for the Additional Term (the "Renewal Option"). Lessee shall provide Lessor with the number of Subscribers to Lessee's System (the "Subscriber Information") as of the Subscriber Date no later than ten (10) days subsequent to the Subscriber Date. In the event the number of Subscribers to Lessee's System on the Subscriber Date does not equal or exceed the Subscriber Multiple and unless Lessor exercises its Renewal Option within ten (10) days from receipt of the Subscriber Information, Lessor shall be deemed to have not exercised the Renewal Option and the Agreement shall expire at the end of the Renewal Term.

Complaint, Ex. B (Third Amendment) ¶ 1(B)(b).

On December 2, 2002, NACEPF's attorney transmitted to the FCC an application for renewal of NACEPF's FCC license for Youngstown. Plaintiff's SUF ¶ 24. NACEPF's attorney sent a copy of the December 2, 2002, FCC submission to Sprint. Id. ¶ 26. NACEPF received a document from Sprint captioned "NACEPF Channel Lease Analysis – Sprint BWG" (the "Channel Lease Analysis") via Federal Express on February 14, 2003. Id. ¶ 17. NACEPF received a similar multi-market summary from Sprint each month. Id. ¶ 22.

From April through November, 2003, NACEPF received monthly payments.[3] See id. ¶ 27; see also Defendant's Local Rule 12.1

[3] Plaintiff has made conflicting statements regarding how many payments it received and from whom it received those payments. For example, in the Complaint Plaintiff alleges that "Sprint continued to pay NACEPF the amounts due ... through January 2004," Complaint (Doc. #1) ¶ 14, and that "Sprint made at least nine monthly payments to NACEPF ...," id. ¶ 17. In Plaintiff's Local Rule 12.1 Statement (Doc.

Counterstatement (Doc. #18) ("Defendant's SDF") ¶ 27. On December 12, 2003, Jennifer Crowder, the Sprint employee responsible for administering contracts, including the Agreement, between Sprint subsidiaries and Plaintiff, see Affidavit of Jennifer L. Crowder (Doc. #20) ("Crowder Aff.") ¶¶ 1-2, sent John Primeau, NACEPF's president, see Affidavit of John Primeau (Doc. #12) ("Primeau Aff.") ¶ 1, a letter which contained the following paragraph:

> I am writing regarding the 1991 Agreement between North American Catholic Educational Programming Foundation, Inc.[,] and American Telecasting of Youngstown, Inc., now a wholly owned subsidiary of Sprint. The Agreement has expired, yet Sprint has continued to pay on a monthly basis. Please accept this letter as official notification that Sprint will be terminating use of your channels and Sprint, therefore, will no longer be providing payment on this expired Agreement. In addition to the check you will receive this month, one additional check will be received in January.

Complaint, Ex. C (Letter from Crowder to Primeau of 12/12/03). Defendant has made no payments since January 2004. Complaint ¶ 19; Plaintiff's SUF ¶ 30.[4]

Plaintiff filed the instant Complaint on November 8, 2004. In Count I, Plaintiff alleges that Defendant has breached the Agreement, as amended, and that Plaintiff has been damaged as a result of that breach. Complaint ¶ 21. Count II seeks a declaration that the Agreement is presently in effect and will

---

#11) ("Plaintiff's SUF"), NACEPF states both that "[f]rom April through December 2003, Sprint continued to send a check to NACEPF ...," Plaintiff's SUF ¶ 27, and that "American made payments ... through January 2004 ...," id. ¶ 30. In his affidavit Mr. Primeau avers that "[f]rom May through November ... 2003 ... Sprint sent a check to NACEPF ...," Affidavit of John Primeau (Doc. #12) ("Primeau Aff.") ¶ 18; that "[o]ur records show that Sprint has not made any further payments we credited for [sic] November 2003," id. ¶ 19; and that "American ... only made seven payments ...," id. ¶ 20.

[4] See n.3.

remain in effect, unless terminated pursuant to any applicable provision thereof, through April 30, 2008. Complaint ¶ 24. On December 20, 2004, Defendant filed its Answer (Doc. #4).

The instant Motion for Summary Judgment (Doc. #10) was filed on October 21, 2005, with supporting memorandum, Plaintiff's SUF (Doc. #11), the Primeau Aff. (Doc. #12), and an affidavit from Howard J. Barr, a Washington, D.C., attorney who has represented NACEPF for a number of years in its dealings with the FCC, see Affidavit of Howard J. Barr (Doc. #13) ("Barr Aff.") ¶¶ 1-2. On November 15, 2005, Defendant's Objection (Doc. #17) was filed, with supporting memorandum and Defendant's SDF (Doc. #18). Three days later, Defendant submitted the Crowder Aff. (Doc. #20). Also on November 18, 2005, Plaintiff filed a Corrected Memorandum in Support of Plaintiff North American Catholic Educational Programming Foundation, Inc.'s Motion for Summary Judgment (Doc. #21) ("Plaintiff's Corrected Mem."). On December 2, 2005, Plaintiff submitted NACEPF's Reply to Defendant's Memorandum of Law in Support of Its Objection to NACEPF's Motion for Summary Judgment (Doc. #26) ("Plaintiff's Reply") and the Supplemental Affidavit of Howard J. Barr (Doc. #27) ("Barr Supp. Aff."), followed on December 5, 2005, by the Supplemental Affidavit of John Primeau (Doc. #28) ("Primeau Supp. Aff.").

The Court conducted a hearing on the Motion for Summary Judgment on December 14, 2005. Thereafter, the Court issued the Order of 12/14/05 (Doc. #29), directing the parties to file supplemental memoranda addressing the jurisdictional issue. See Order of 12/14/05 at 1-2. Plaintiff filed its Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. #32) ("Plaintiff's Supp. Mem.") and the Second Supplemental Affidavit of John Primeau (Doc. #33) ("Primeau Second Supp. Aff.") on January 9, 2006. On January 31, 2006, Defendant's Reply to Plaintiff's Supplemental Memorandum Concerning Federal

Jurisdiction (Doc. #35) ("Defendant's Supp. Mem.") was filed.

**Discussion**

Plaintiff alleges that "[t]his Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201."[5] Complaint ¶ 5. Section 1332(a) provides, in relevant part, that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> (1) citizens of different States;
>
> ....

28 U.S.C. § 1332(a). Defendant argues that the Court lacks jurisdiction to hear and decide this matter because to a legal certainty the amount in controversy in the instant diversity action is less than $75,000. See Defendant's Objection at 2; Defendant's Memorandum of Law in Support of Its Objection to Plaintiff's Motion for Summary Judgment ("Defendant's Mem.") at 18-19; see also Tape of 12/14/05 hearing.

"[A] court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." White v. Gittens, 121 F.3d 803, 806 (1st Cir. 1997)(quoting In re Recticel Foam Corp., 859 F.2d 1000,

---

[5] The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for federal jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950)("[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.")(internal citation and quotation marks omitted); Local Union No. 12004, United Steelworkers of America v. Massachusetts, 377 F.3d 64, 73 (1st Cir. 2004)(noting that declaratory judgment procedure "does not alter the rules of federal jurisdiction"); Colonial Penn Group, Inc. v. Colonial Deposit Co., 654 F.Supp. 1247, 1250 (D.R.I. 1987)(quoting Skelly Oil v. Phillips Petroleum Co., 339 U.S. at 671, 70 S.Ct. at 879).

1002 (1st Cir. 1988)); see also McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004)("It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction.");[6] In re Sheridan, 362 F.3d 96, 100 (1st Cir. 2004) (noting that "the courts are duty-bound to inquire, *sua sponte*, even absent objection by any party," into the question of subject matter jurisdiction); Iglesias v. Mut. Life Ins. Co. of New York, 156 F.3d 237, 241 (1st Cir. 1998)(noting that although district court's jurisdiction had not been challenged, the "Court had [a] duty to raise [the] question of whether [the] jurisdictional amount was involved")(citing Clark v. Paul Gray, Inc., 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939)); Hainey v. World Am Communications, Inc., 263 F.Supp.2d 338, 345 (D.R.I. 2003) ("[T]he Court is required to address its subject matter jurisdiction over an action, *sua sponte* if need be."); accord Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000)("[A] federal court must inquire *sua sponte* into the issue [of subject matter jurisdiction] whenever it appears that jurisdiction may be lacking."). Accordingly, after the December 14, 2005, hearing, the Court issued an order in which it noted its uncertainty as to whether the amount in controversy exceeds

---

[6] In McCulloch v. Vélez, 364 F.3d 1 (1st Cir. 2004), the Court of Appeals for the First Circuit also noted that before a court can dismiss an action under Fed. R. Civ. P. 12(b)(1), "the party asserting the existence of subject matter jurisdiction must be given notice that the issue is in dispute and an adequate opportunity to ascertain and present relevant facts and arguments supporting his claim of jurisdiction," id. at 6. Here, the parties were given notice by the Order for Further Briefing (Doc. #29) ("Order of 12/14/05") that the Court had doubts as to its subject matter jurisdiction, and the parties were directed to submit supplemental memoranda addressing the jurisdictional issue. See Order of 12/14/05 at 1-2. Plaintiff filed its Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. #32) ("Plaintiff's Supp. Mem.") on January 9, 2006. See Docket. Defendant's Reply to Plaintiff's Supplemental Memorandum Concerning Federal Jurisdiction (Doc. #35) ("Defendant's Supp. Mem.") was filed on January 31, 2006. See id.

$75,000 and directed the parties to submit supplemental memoranda regarding this issue. See Order for Further Briefing at 1-2. In its supplemental memorandum, Plaintiff argues that its "damage claim in this case exceeds $75,000, and is therefore sufficient to meet the jurisdictional requirements of 28 U.S.C. § 1332(a)." Plaintiff's Supp. Mem. at 1. Plaintiff has submitted a second supplemental affidavit from its president, Mr. Primeau, in support of its argument that subject matter jurisdiction exists. See Primeau Second Supp. Aff. Defendant counters that the jurisdictional minimum has not been met and requests dismissal. See Defendant's Supp. Mem. at 1.

The United States Supreme Court has instructed that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)(footnotes omitted).

> "Under St. Paul, a plaintiff's allegations of damages that meet the amount-in-controversy requirement suffices unless questioned by the opposing party or the court." Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). Once a defendant questions jurisdiction by challenging the amount of damages alleged in the complaint, the burden shifts to the plaintiff to show that it is not a legal certainty that the claims do not involve the requisite amount. Id. at 4; Barrett v. Lombardi, 239 F.3d 23, 30-31 (1st Cir. 2001). "A party may meet this burden by amending the pleadings or by submitting affidavits." Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

Rosario Ortega v. Star-Kist Foods, Inc., 370 F.3d 124, 128 (1st Cir. 2004)(footnote omitted), rev'd on other grounds sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S.Ct. 2611

(2005).

Plaintiff offers two grounds in support of federal jurisdiction. First, it argues that its "claim for attorney fees can be included in its claim for damages, thus causing the amount in controversy to exceed $75,000." Plaintiff's Supp. Mem. at 1. Second, it asserts that, "wholly apart from its claim for attorney fees, NACEPF's damage claims meet the jurisdictional amount on the basis of traditional breach of contract damages principles." Id. The Court addresses each of these contentions in turn.

As a general rule,

> attorney's fees are excluded from the amount-in-controversy determination because "the successful party does not collect his attorney's fees in addition to or as part of the judgment." Velez v. Crown Life Ins. Co., 599 F.2d 471, 474 (1st Cir. 1979)(citing 1 Moore's Federal Practice 0.99(2)). There are two exceptions to this rule: when the fees are provided for by contract, and when a statute mandates or allows payment of the fees. Id.

Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991)(quoting Velez v. Crown Life Ins. Co., 599 F.2d at 474); Billings & Co. v. Pine St. Realty Assocs. Ltd. P'ship, 754 F.Supp. 10, 13 (D.R.I. 1990) (same). Plaintiff argues that the second exception applies in the instant matter, see Plaintiff's Supp. Mem. at 4-7; see also Complaint at 5 (requesting attorney fees pursuant to R.I. Gen. Laws § 9-1-45); Primeau Second Supp. Aff. ¶¶ 7, 9, and states that even if Defendant's figures are accepted, "there was still more than $75,000 in controversy at the time this action was filed, because NACEPF's attorney fees exceeded $2,750 at that

time, and $72,249.97[7] plus $2,750+ exceeds $75,000," Primeau Second Supp. Aff. ¶ 7.

Section 9-1-45 of the Rhode Island General Laws provides that:

> The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
> (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
> (2) Renders a default judgment against the losing party.

R.I. Gen. Laws § 9-1-45 (1997 Reenactment). In Billings & Co. v. Pine Street Realty Associates Ltd. Partnership, Senior U.S. District Judge Raymond Pettine of this Court interpreted this statute and held that "in Rhode Island, unless a court can, on the basis of the pleadings, find the complaint or the opposition thereto completely meritless, the requested award must be added to the principal sum in deciding whether jurisdiction should be retained." Billings & Co. v. Pine St. Realty Assocs. Ltd. P'ship, 754 F.Supp. 10, 14 (D.R.I. 1990). Subsequent to Billings & Co., however, this Court has emphasized that an award of attorney's fees under § 9-1-45 is within the Court's discretion, see Morris Graphics, Inc. v. Casey Printing, Inc., No. Civ.A. 97-668-T, 2000 WL 34019592, at *4 (D.R.I. Feb. 3, 2000)(noting that [§ 9-1-45] confers "broad discretion on the Court to determine whether ... fees should be awarded"), and that the statute is to be applied in limited circumstances, see id. (noting that "under § 9-1-45, awards of attorney's fees are limited to cases in which there is a complete absence of justiciable issue of law or fact raised by the losing party") (internal quotation marks omitted);

---

[7] Defendant contends that Plaintiff's damages "total no more than $72,249.97, exclusive of attorneys' fees." Defendant's Supp. Mem. at 3; see also id. at 7.

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 331 (D.R.I. 1999)("Pursuant to [§ 9-1-45], attorneys' fees are awarded only if a Court determines that there was a complete absence of a justiciable issue of either law or fact.")(internal quotation marks omitted). This approach seems in keeping with the First Circuit's statement that federal courts "have a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001); see also Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991)(declining to reach question of whether similar fee-shifting statute fell within Velez exception and reiterating requirement that "because attorney's fees generally are not recoverable, the party claiming a right to federal jurisdiction in some manner must demonstrate entitlement under contract or statute to the recovery of such fees").

Plaintiff's argument that its attorney's fees should be included in determining whether the jurisdictional minimum has been met is unpersuasive. The Court cannot find that "there [is] a complete absence of a justiciable issue of either law or fact ...," R.I. Gen. Laws § 9-1-45; see also Primeau Second Supp. Aff. ¶ 9 ("NACEPF is entitled to recover its attorney fees under R.I. Gen. Laws § 9-1-45 because there is a complete absence of any justiciable issue of law or fact in this case."); Plaintiff's Supp. Mem. at 6 (same), or that Defendant's opposition to Plaintiff's Complaint was "completely meritless ...," Billings & Co. v. Pine St. Realty Assocs. Ltd. P'ship, 754 F.Supp. 10, 14 (D.R.I. 1990). There are numerous justiciable issues of law or fact.[8] For example, the fact that the Court ordered further

[8] Defendant's Local Rule 12.1 Counterstatement (Doc. #18) ("Defendant's SDF") contains eighteen "Material Facts in Dispute," Defendant's SDF at 1-7, as well as a list of "Additional Facts Precluding Summary Judgment," id. at 8-17.

briefing regarding jurisdiction demonstrates the existence of a justiciable issue. In addition, the parties dispute whether the Agreement was renewed for the Additional Renewal Term. See Plaintiff's SUF ¶ 23; Defendant's SDF ¶ 22; Primeau Aff. ¶ 17; Barr Aff. ¶ 5; Crowder Aff. ¶¶ 39, 43. Other issues include disputes regarding who drafted the Third Amendment, see Crowder Aff. ¶ 17; Barr. Supp. Aff. ¶¶ 2-3; whether Defendant had an absolute right not to renew the Agreement, see Crowder Aff. ¶ 19; Barr Supp. Aff. ¶ 4; whether Plaintiff received the Subscriber Information at all or in the manner provided in the Agreement, see Plaintiff's SUF ¶¶ 15-21; Defendant's SDF ¶¶ 15-21; Primeau Aff. ¶¶ 13-16; Crowder Aff. ¶¶ 28, 35;[9] whether Plaintiff was required to provide Defendant with notice of its election to renew the Agreement in a particular manner, see Plaintiff's SUF ¶ 14; Defendant's SDF ¶ 14; Primeau Aff. ¶ 11; Barr Aff. ¶¶ 5, 7; Crowder Aff. ¶ 22; Primeau Supp. Aff. ¶ 4, or whether Plaintiff signaled its election by submitting its renewal application to the FCC and sending a copy of the FCC submission to Defendant, see Complaint ¶ 15; Plaintiff's SUF ¶¶ 24-26; Defendant's SDF ¶¶ 22, 25; Primeau Aff. ¶ 17; Barr. Aff. ¶¶ 5-7; Crowder Aff. ¶¶ 39-41, 53-54, or by accepting Defendant's payments subsequent to April, 2003, see Complaint ¶ 17; Plaintiff's SUF ¶ 27; Defendant's SDF ¶¶ 22, 27; Primeau Aff. ¶ 18; Crowder Aff. ¶¶ 44-

---

[9] Specifically, the parties dispute whether the Channel Lease Analysis constituted the required Subscriber Information, see Plaintiff's SUF ¶ 20; Defendant's SDF ¶ 20; Primeau Aff. ¶¶ 13, 16; Affidavit of Jennifer L. Crowder (Doc. #20) ("Crowder Aff.") ¶¶ 35, 55; whether the information was sent in a timely manner (i.e., whether the Agreement required that it be sent within ten calendar days or ten business days), see Plaintiff's SUF ¶¶ 15, 17; Defendant's SDF ¶ 15; Primeau Aff. ¶ 12; Crowder Aff. ¶ 35; what manner of delivery was required, see Primeau Aff. ¶ 14; Crowder Aff. ¶¶ 28, 30; Supplemental Affidavit of John Primeau (Doc. #28) ("Primeau Supp. Aff.") ¶¶ 3-4; and whether the information was sent to the proper address, see Plaintiff's SUF ¶ 18; Defendant's SDF ¶ 18; Primeau Aff. ¶ 15; Crowder Aff. ¶ 28; Primeau Supp. Aff. ¶¶ 3-4.

46; and whether the parties' course of conduct with regard to other leases was identical to that at issue here, see Plaintiff's SUF ¶¶ 33-34; Defendant's SDF ¶¶ 33-34; Primeau Aff. ¶¶ 21-22; Crowder Aff. ¶¶ 57-59. Finally, there is a dispute regarding the amount of Plaintiff's alleged damages.[10] See Complaint ¶¶ 14, 17; Plaintiff's SUF ¶¶ 31-32; Defendant's SDF ¶¶ 31-32; Primeau Aff. ¶ 20; Crowder Aff. ¶ 56; Primeau Second Supp. Aff. ¶ 6; see also Discussion infra at 15-18. Accordingly, the Court concludes that Plaintiff has not demonstrated entitlement to attorney's fees under § 9-1-45. See Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991).

Plaintiff argues, alternatively, that "[e]ven without considering NACEPF's attorney fees, the amounts due NACEPF under the Agreement meet the jurisdictional requirements of § 1332." Plaintiff's Supp. Mem. at 7. Defendant counters that "NACEPF (through Primeau) has now sworn to three entirely different and mutually exclusive damages calculations ...," Defendant's Supp. Mem. at 5, and that "NACEPF is bound by the judicial admissions in its Complaint with respect to damages and cannot now conveniently manufacture a new damages claim as a means to avoid dismissal of this action," id. at 6.

In the Complaint, Plaintiff alleges that "Sprint continued to pay NACEPF the amounts due under the [Third] Amendment through

---

[10] The parties do not dispute that pursuant to a Second Amendment to the Agreement, Defendant was to pay Plaintiff either a monthly fee of $0.20 per subscriber, based on the average number of subscribers, or a minimum of $5,000 in subscriber fees annually, whichever was greater, as well as a monthly transmission fee of $1,000.00. See Crowder Aff. ¶¶ 12-13; id., Exhibit ("Ex.") A (Second Amendment); Second Supplemental Affidavit of John Primeau (Doc. #33) ("Primeau Second Supp. Aff.") ¶ 4 (citing Second Amendment). According to the Second Amendment, the "average number of subscribers shall equal the number of subscribers as of the last day of the prior month plus the number of subscribers as of the last day of the current month divided by two." Crowder Aff. ¶ 14 (quoting Second Amendment). The dispute centers on what number of subscribers is to be utilized. See Primeau Aff. ¶ 20; Crowder Aff. ¶¶ 33-34, 56; Primeau Second Supp. Aff. ¶ 6.

January 2004," Complaint ¶ 14, that "Sprint made at least nine monthly payments to NACEPF pursuant to the Agreement," id. ¶ 17, and that "NACEPF accepted all of Sprint's payments ...," id. According to Defendant, it has made a total of nine payments of $1,416.67 per month[11] for a total of $12,750.03, see Crowder Aff. ¶¶ 47, 49, 56, which Plaintiff accepted without objection, see id. ¶ 49.

In Plaintiff's SUF and the Primeau Aff., however, Plaintiff asserts that Defendant owes $2,576.40 per month[12] under the Agreement until it expires on April 30, 2008, see Plaintiff's SUF ¶ 32; Primeau Aff. ¶ 20, for a total of $154,584.00 ($2,576.40 per month x 60 months = $154,584.00), see Primeau Aff., Ex. D (Youngstown Renewal Term April 30, 2003 thru April 30, 2008). Plaintiff additionally avers that Defendant made only seven payments of $1,416.67 from May-November 2003. See Primeau Aff. ¶¶ 18, 20.

In the Second Supp. Primeau Aff., Plaintiff suggests yet another figure. According to the affidavit, the number of subscribers in the Youngstown market declined substantially after Sprint's acquisition of ATY in November of 1999. Second Supp. Primeau Aff. ¶ 6. In Plaintiff's view, "this decline is

---

[11] The $1,416.67 figure is based on a monthly transmission fee of $1,000.00, see Crowder Aff. ¶ 12, and a monthly programming fee of $416.67, which represents one-twelfth of the annual minimum programming fee of $5,000.00, see id. ¶ 34. According to the Crowder Aff., "[g]iven that the Programming Fee is to be the greater of $5,000 annually or twenty cents ($0.20) per month per subscriber, [ATY] is obligated to pay NACEPF a per subscriber Programming Fee only if the annual number of monthly subscribers exceeds 25,000 (or, on average, 2,083 subscribers per month)." Crowder Aff. ¶ 33. "Since September 2001, the number of monthly subscribers to [ATY's] services has never exceeded 2,083." Id. ¶ 34.

[12] The $2,576.40 figure is based on a monthly transmission fee of $1,000.00 and a monthly programming fee of $1,576.40, which is derived from multiplying a subscriber count of 7,882 by $0.20. See Primeau Aff. ¶ 20; see also id., Ex. D (Youngstown Renewal Term April 30, 2003 thru April 30, 2008).

attributable to the fact that Sprint neglected [ATY's] wireless cable television enterprise because Sprint acquired this spectrum for an entirely differen[t] business purpose ...." Second Supp. Primeau Aff. ¶ 6. Thus, Plaintiff argues that in calculating its damages, its "lost subscription fees should be based on the level of subscribers as of September 1999 (2,964)[13] -- when Sprint first acquired [ATY] -- rather than on the level at some later time, after the subscriber base dwindled," id., for a total of $95,568.00,[14] see Second Supp. Primeau Aff. ¶ 6.

The Court agrees that Plaintiff is bound by the judicial admissions in its Complaint and that, therefore, the allegations in the Complaint control. See Defendant's Supp. Mem. at 6, 7. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." Schott Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992); cf. Murphy v. Ford Motor Co., 170 F.R.D. 82, 85 (D. Mass. 1997)(noting that "[a] litigant may not defeat summary judgment by submitting an affidavit that, without plausible explanation, contradicts his own prior deposition testimony" and that "the contradictory matter in the affidavit must be stricken")(citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994)). Although Plaintiff did not request a specific amount of damages in the Complaint, see Complaint at 5 (requesting "money damages in an amount to be determined at trial"), Plaintiff alleged that

---

[13] Plaintiff states that "the number of subscribers in the Youngstown market in August and September 1999 (when Sprint's acquisition of [ATY] was completed) was 3,016 and 2,912, respectively. Thus, the average subscriber count as of the time of the acquisition was 2,964." Second Supp. Primeau Aff. ¶ 5.

[14] Plaintiff bases this figure on a transmission fee of $60,000 ($1,000.00 per month x 60 months = $60,000.00) plus a subscriber fee of $35,568.00 (2,964 subscribers x $0.20 x 60 months = $35,568.00). See Second Supp. Primeau Aff. ¶ 6.

Defendant "continued to pay NACEPF the amounts due under the [Third] Amendment through January 2004," Complaint ¶ 14, that Defendant "made at least nine monthly payments to NACEPF pursuant to the Agreement," id. ¶ 17, and that "NACEPF accepted all of [Defendant's] payments," id. Mr. Primeau acknowledges that these payments were in the amount of $1,416.67 each. See Primeau Aff. ¶ 20. Sixty payments of $1,416.67 would total $85,000.20 ($1,416,67 per month x 60 months = $85,000.20), of which Plaintiff has received nine payments of $1,416.67 totaling $12,750.03 ($1,416.67 per month x 9 months = $12,750.03), see Crowder Aff. ¶ 56; see also Complaint ¶ 17. Thus, the Court concludes that, were Plaintiff to recover the value of the Additional Renewal Term through April 30, 2008, Plaintiff's damages would total $72,250.17[15] ($85,000.20 - $12,750.03 = $72,250.17), not the $154,584.00 claimed in Ex. D. to the Primeau Aff. or the $95,568.00 claimed in the Primeau Second Supp. Aff.

It is clear to the Court that Plaintiff, "the party seeking to invoke jurisdiction ..., " Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001), has not met its "burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount," id. at 5 (quoting Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d at 88). Although Plaintiff submitted the Primeau Second Supp. Aff. in support of its claim that the jurisdictional minimum has been met, the Court has rejected both bases contained therein for asserting that

---

[15] Defendant states that Plaintiff "has admitted that its damages here total no more than $72,249.97, exclusive of attorneys' fees." Defendant's Supp. Mem. at 3. This figure appears to be based on a total value of the Agreement of $85,000.00, not $85,000.20. See id. at 2-3 ("Over the five-year Additional Renewal Term that NACEPF claims, it would receive 60 monthly payments totaling $85,000, of which at least nine payments of $1416.67 (or $12,750.03) NACEPF admits to having already been paid and accepted.").

Plaintiff's damages exceed $75,000. Accordingly, the matter should be dismissed for lack of subject matter jurisdiction. I so recommend.

**Conclusion**

Based on the foregoing, I recommend that the action be dismissed for lack of subject matter jurisdiction. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
April 11, 2006